**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

FIRST VIRGINIA BANKS,
INCORPORATED,
Plaintiff-Appellant,

v.

No. 99-1042

BP EXPLORATION & OIL,
INCORPORATED; STANDARD OIL
COMPANY; BP AMERICA,
INCORPORATED,
Defendants-Appellees.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Albert V. Bryan, Jr., Senior District Judge.
(CA-98-305-A)

Argued: December 2, 1999

Decided: March 14, 2000

Before WILKINSON, Chief Judge, and
WILKINS and LUTTIG, Circuit Judges.

_____

Affirmed by published opinion. Judge Luttig wrote the opinion, in
which Chief Judge Wilkinson joined. Judge Wilkins wrote an opinion
concurring in part and dissenting in part.

_____

**COUNSEL**

**ARGUED:** George Franklin West, Jr., RICHARDS, MCGETTI-
GAN, REILLY & WEST, P.C., Alexandria, Virginia, for Appellant.

Joseph Dominic Lonardo, VORYS, SATER, SEYMOUR & PEASE, L.L.P., Washington, D.C., for Appellees. **ON BRIEF:** Kathleen J.L. Holmes, RICHARDS, MCGETTIGAN, REILLY & WEST, P.C., Alexandria, Virginia, for Appellant. M. Sean Purcell, VORYS, SATER, SEYMOUR & PEASE, L.L.P., Washington, D.C., for Appellees.

_____

**OPINION**

LUTTIG, Circuit Judge:

In this diversity action, appellant First Virginia Banks, Inc., ("FVBI") appeals from the district court's grant of summary judgment to appellee BP America, Inc. ("BP") on the ground that FVBI's trespass claim against BP was barred by the applicable Virginia statute of limitations. FVBI also contests the district court's judgment after a bench trial that FVBI was not a third-party beneficiary under Virginia law to a settlement agreement between BP and Eakin Properties, Inc. (Eakin). For the reasons set forth below, we affirm.

I.

From 1977 to 1986, BP operated a gasoline station on a parcel of land owned by Eakin in Falls Church, Virginia. In 1986, BP ceased its operations at that site, and removed from the site the underground tanks in which it had stored gasoline. In July 1988, Eakin discovered that the former BP site contained petroleum contamination.

FVBI owns an undeveloped parcel of residentially-zoned land located across the street from the former BP site, which it has divided into fourteen contiguous lots. FVBI also owns two parcels of commercially-zoned land adjacent to the former BP cite. In the fall of 1988, Eakin alerted FVBI to the contamination on the former BP site and, in January 1989, FVBI obtained test results confirming that the contamination had reached the groundwater beneath its own commercial and residential parcels.

Pursuant to an agreement with Eakin, BP took measures to mitigate the damage to the site of its former gas station. Despite these mea-

2

sures, Eakin filed suit against BP, alleging that the contamination left behind by BP damaged the property and that the delay involved in decontaminating the property resulted in lost rent revenues for Eakin. This lawsuit ended in a confidential settlement agreement, unsealed after the present suit between BP and FVBI commenced, in which BP agreed, inter alia, to "remediate as required by the State Water Control Board." J.A. 329-30.

On March 5, 1998, FVBI filed suit against BP, alleging trespass and negligence claims against BP resulting from the migration of petroleum hydrocarbons from the former BP site into the groundwater beneath FVBI's property. FVBI also brought a breach of contract claim against BP, asserting that it was a third-party beneficiary to the settlement agreement between BP and Eakin. The district court granted summary judgment to BP with respect to the negligence and trespass claims, and entered a final judgment in BP's favor on the contract claim after a bench trial. FVBI appeals the disposition below of its trespass and contract claims.

II.

FVBI first asserts that the district court erred in granting summary judgment to BP with regard to FVBI's trespass claim. The district court concluded that FVBI's claim was barred under the applicable statute of limitations. See Va. Code § 8.01-243(B) ("Every action for injury to property . . . shall be brought within five years after the cause of action accrues."). The court determined that FVBI's cause of action accrued, at the latest, in January of 1989, when petroleum contamination was discovered on its property. See J.A. 33-34. On appeal, FVBI claims that petroleum hydrocarbons migrated onto its property in intervals throughout the 1990s, and that each instance in which petroleum migrated onto its property gave rise to a new cause of action, with a new five-year limitations period. We disagree.

Under Virginia law, a cause of action "shall be deemed to accrue and the prescribed limitation period shall begin to run from the date the injury is sustained in the case of . . . damage to property." Va. Code § 8.01-230. Data from tests conducted on FVBI's land in January of 1989 revealed that, by that date, the injury at issue here had

3

begun to be sustained: petroleum hydrocarbons from the former BP site had entered the groundwater beneath FVBI's property.

It is true, as FVBI asserts, that the contamination at issue did not cease in 1989; rather, petroleum hydrocarbons continued to migrate onto FVBI's land throughout the 1990s. FVBI is also correct to point out that, under Virginia law, if a series of discrete legal wrongs occurs, each instance of wrongdoing gives rise to a separate cause of action. See, e.g., Hampton Roads Sanitation Dist. v. McDonnell, 234 Va. 235, 239 (1987) (holding that nine separate discharges of sewage onto the plaintiff's property gave rise to separate causes of action). However, FVBI overlooks the fact that the migration of petroleum hydrocarbons onto its land did not occur in distinct episodes, as in Hampton Roads. Rather, the migration has occurred continuously throughout the decade. In that regard, this case is indistinguishable from Churchill Apartments Assocs. v. City of Richmond, 36 Va. Cir. 204 (1995), in which the Circuit Court of Virginia held that, in the case of an injury caused by the continuing migration of methane gas, the cause of action accrued when methane first migrated onto the plaintiff's land. See id. at 207.

We thus conclude, as did the district court, that FVBI's trespass claim had accrued by January of 1989, and that the statute of limitations on that claim had expired by 1994, four years before FVBI filed the present action. The district court therefore properly granted BP's motion for summary judgment on FVBI's trespass claim.**1**

III.

FVBI also asserts that it was a third-party beneficiary to the settle-

_____

**1** On appeal, FVBI raises two arguments in support of its statute of limitations claim for the first time. First, FVBI claims that, because it has subdivided its land surrounding the former BP cite into sixteen lots, the statute of limitations should begin to run with respect to each of the lots only when contaminants entered that lot. Second, FVBI asserts that, although the five-year statute of limitations applies to its claim for damages, it does not apply to its claim for injunctive relief. Because neither of these arguments were raised below, we decline to consider them on appeal.

4

ment agreement between BP and Eakin, and that BP failed to fulfill its duties to FVBI under that contract. The district court ruled that, because BP and Eakin did not express a clear intent to benefit FVBI directly when they entered into the settlement agreement, FVBI was not a third-party beneficiary to that compact under Virginia law. On appeal, FVBI argues that the district court impermissibly prohibited it from introducing certain evidence in support of its third-party beneficiary theory. Alternatively, FVBI contends that, even on the evidence it was permitted to introduce, the district court's conclusion that BP and Eakin did not intend their agreement to benefit FVBI directly was clearly erroneous. We reject both claims.

As to the district court's restriction on the amount of evidence FVBI could introduce, Federal Rule of Civil Procedure 52 requires that a party be "fully heard" before a judgment is rendered on a particular issue. However, the right to be "fully heard" does not amount to a right to introduce every shred of evidence that a party wishes, without regard to the probative value of that evidence. Indeed, the Advisory Committee Note to Rule 52(c) states that the Rule "authorizes the court to enter judgment at any time that it can appropriately make a dispositive finding of fact on the evidence." Fed. R. Civ. P. 52 advisory committee's note (1991 Amendment). In the present case, the district court precluded FVBI from producing further evidence predating the settlement agreement between BP and Eakin, and concerning whether BP and Eakin intended their agreement to benefit FVBI directly. In so doing, the district court noted that it viewed evidence predating the agreement as being of little relevance to its determination whether the agreement itself was intended to confer a direct benefit on FVBI. See J.A. 49, 51. Moreover, the district court precluded the further production of pre-agreement evidence only after it had allowed FVBI to introduce into evidence all but 38 of the 101 exhibits that FVBI wished to produce, and only after the court had warned FVBI that it would not continue to endure a "letter by letter by letter" presentation of pre-agreement evidence. J.A. 51. Under these circumstances, we cannot say that the district court abused its discretion in placing some limitation on FVBI's introduction of pre-agreement evidence.

As to the question whether the district court's determination on the record before it was clearly erroneous, FVBI asserts that the evidence

5

it was permitted to introduce established that the provision of the agreement requiring BP to "remediate as required by the State Water Control Board," J.A. 329, was intended to benefit FVBI, given that the Board required remedial measures that would limit the impact of the petroleum contamination on FVBI's property. However, under Virginia law, a party incidentally benefitted by an agreement does not attain third-party beneficiary status; rather a party claiming that status must show that the parties to the underlying agreement "clearly and definitely intended to bestow a direct benefit" upon it. Obenshain v. Halliday, 504 F. Supp. 946, 956 (E.D. Va. 1980) (citing Richmond Shopping Center, Inc. v. Wiley N. Jackson Co., 220 Va. 135 (1979); Valley Landscape Company, Inc. v. Rolland , 218 Va. 257 (1977)). In concluding that the settlement agreement in the present case does not evince such an intent on the part of BP and Eakin, the district court observed that: (1) the agreement does not expressly mention FVBI, (2) the agreement was kept confidential until after the present suit commenced, suggesting the lack of a specific intent to benefit third parties directly, and (3) the testimony of Charles Schneider, Eakin's lawyer at the time of the settlement agreement, stating his view that the agreement would have the effect of limiting the damage to FVBI's property, not only failed to establish that the parties intended the agreement to directly (as opposed to incidentally) benefit FVBI, but also was lacking in credibility and appeared "defensive."[2] See J.A. 44-45. Given these considerations, and having reviewed the record on appeal, we cannot conclude that the district court's factual determination that BP and Eakin did not intend their settlement agreement to benefit FVBI directly was clearly erroneous.

CONCLUSION

For the reasons stated herein, we affirm the judgment of the district court.

AFFIRMED

_____
[2] Because the district court acted as the fact-finder with regard to FVBI's contract claim, we decline, despite FVBI's protestations on appeal, to disturb the district court's determination regarding the credibility of Schneider's testimony.

6

WILKINS, Circuit Judge, concurring in part and dissenting in part:

The majority opinion affirms the grant of summary judgment by the district court on both FVBI's trespass claim and its third-party beneficiary claim. I concur regarding the third-party beneficiary claim but respectfully dissent regarding the trespass cause of action. I would conclude that the trespass claim is not barred to the extent FVBI seeks damages for migrations of contaminants that occurred during the five years immediately prior to the filing of this action.

I.

In granting summary judgment against FVBI, the district court stated that FVBI's entire trespass cause of action accrued when the first invasion occurred. The court stated that the case turned on "a distinction between cases in which a single trespass continues over an extended period of time, and those in which the tortious actions are not continuous but occur only at intervals." J.A. 32. Concluding as a matter of law that the migration of contamination from Eakin's property to FVBI's had been continuous since it first began, the court ruled that FVBI's entire cause of action accrued no later than the date of the first invasion, more than five years prior to the filing of this suit. The majority, relying largely on a single trial court opinion, see Churchill Apartments Assocs. v. City of Richmond, 36 Va. Cir. 204 (1995), agrees with the district court that the continuous nature of the trespass here completely bars FVBI's trespass claim.

II.

A trespass is an unauthorized entry onto property that causes an interference with the property owner's possessory interest in the property. See Cooper v. Horn, 448 S.E.2d 403, 406 (Va. 1994). Permitting noxious matter to escape from one's land and injure the land of another constitutes a trespass. See Akers v. Mathieson Alkali Works, 144 S.E. 492, 495 (Va. 1928). A cause of action for trespass accrues when the injury is sustained. See Va. Code Ann. § 8.01-230 (Michie Supp. 1999). Because it is a property damage claim, FVBI's trespass action is subject to a five-year statute of limitations. See Va. Code Ann. § 8.01-243(B) (Michie 1992); Vines v. Branch, 418 S.E.2d 890, 894 (Va. 1992).

7

When a trespass is short-lived, the cause of action accrues and the statute of limitations begins to run when an injury is first sustained, although the trespass may cause permanent injury to the plaintiff's property. See W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 13, at 83 (5th ed. 1984). In such a case, a single cause of action accrues. Cf. Hampton Roads Sanitation Dist. v. McDonnell, 360 S.E.2d 841, 843 (Va. 1987) (explaining that when trespasses "occur only at intervals, each occurrence inflicts a new injury and gives rise to a new and separate cause of action"). The same is true in the case of a single entry that continues, as when a defendant dumps waste onto the plaintiff's property and fails to remove it. See Keeton, supra, § 13, at 83-84. In that case, the cause of action for damages for both the past presence and the anticipated future presence of the waste accrues when the waste is dumped, on the theory that "the defendant is not privileged to commit a second trespass to remove" the invasion, and thus it is presumed that the waste will remain indefinitely. Id. at 84. Stated another way, the failure to remove waste that has been wrongfully placed on a plaintiff's land does not give rise to separate or successive causes of action.

A different rule may apply when a condition on the defendant's property--such as the uncontained contamination here--is the source of a constant and continuing migration of contaminants onto the plaintiff's property. See Hampton Roads Sanitation Dist., 360 S.E.2d at 843-44. In the circumstance of an ongoing trespass, if the cause of the migration of contaminants onto the plaintiff's property is permanent and at once "produces `all the damage which can ever result from it,'" then the plaintiff's injury is permanent and the plaintiff still is relegated to a single cause of action that accrues when the invasion begins. Id. (quoting Norfolk & W. Ry. v. Allen, 87 S.E. 558, 560 (Va. 1916) (opinion on rehearing)); cf. Keeton, supra, § 13, at 84 (stating that when "the trespass results from a condition on the defendant's own land," the date of accrual for damages for prospective invasions "turn[s] upon the permanent nature of the condition").* However, if

_____

*The closely related concepts of trespass and nuisance overlap in this area. See Haywood v. Massie, 49 S.E.2d 281, 284 (Va. 1948). While a trespass is an entry on or use of another's property without permission, a nuisance is a nontrespassory interference with another's reasonable use

8

the cause--and therefore the injury--is not permanent, the continuing invasion gives rise to new and separate causes of action that continue to accrue for so long as the invasion continues to occur. See Virginia Hot Springs Co. v. McCray, 56 S.E. 216, 218-19 (Va. 1907).

A permanent injury results when the condition causing it is not likely to be abated. See id. at 218 (explaining that when a condition on defendant's property that causes an interference with the plaintiff's enjoyment of his property might not be continued, a single cause of action encompassing future injury is not appropriate); cf. id. at 220 (noting that defendant's intentions are relevant to whether an injury is considered permanent). In contrast, if the condition is likely to be abated, i.e., if it "`is likely to be removed by any agency,'" the injury is not considered permanent. Id. at 219 (quoting City of Paris v. Allred, 43 S.W. 62, 63 (Tex. Civ. App. 1897, writ denied)); see Richmond Fairfield Ry. v. Llewellyn, 157 S.E. 809, 818 (Va. 1931) (holding that landowner's injury from sewer discharge on her property was not permanent when the other party planned to discontinue the discharge); cf. Keeton, supra,§ 13, at 84 (stating that "likelihood that the defendant will terminate" the condition is relevant to the question of whether "there must be a single recovery of all damages"). Whether an injury is permanent is generally a fact question for a jury. See Virginia Hot Springs, 56 S.E. at 220.

Moreover, when the question of whether an injury is permanent is a close one, a finding that it is not permanent is favored. See Norfolk & W. Ry. v. Allen, 87 S.E. 558, 561 (Va. 1916) (opinion on rehear-

_____

or enjoyment of his property. See Keeton, supra, § 13, at 70. The scenario of a condition on a defendant's property causing continuing injury to a plaintiff's property or to his enjoyment thereof can be common to both trespass and nuisance causes of action. Not surprisingly, in such circumstances the rule to be applied in determining whether a plaintiff is relegated to a single cause of action is not affected by which legal theory is the basis for the suit. See Hampton Roads Sanitation Dist., 360 S.E.2d at 843 (citing Norfolk & Western Railway v. Allen, a nuisance case, as authority for the rules to be applied concerning the accrual of a trespass cause of action for the ongoing discharge of sewage onto the plaintiff's land).

9

ing). The reasons for the preference are twofold. First, the plaintiff should not be compensated for a permanent injury when he may not suffer a permanent injury. See Norfolk & W. Ry. v. Allen, 87 S.E. 558, 559 (Va. 1915) (stating that "it cannot be assumed that the defendant will continue to illegally inflict injury upon the plaintiff" because "[t]o indulge such a presumption might result in awarding the plaintiff damages for an injury never suffered by him" (internal quotation marks omitted)), aff'd on reh'g, 87 S.E. 558 (Va. 1916); id. at 561 (opinion on rehearing) (noting "the injustice of compelling the defendant to pay for a perpetual wrong, which he would perhaps put an end to" (internal quotation marks omitted)). Second, when a plaintiff fails to bring suit concerning an ongoing trespass within five years of the initial invasion, setting the accrual date for the entire cause of action at the date of the initial invasion has a perverse effect: It not only allows the defendant to avoid liability for his previous wrong, but gives him a license to continue the wrongful conduct with impunity. See id. at 561 (opinion on rehearing).

Applying these rules to the present case, to the extent that FVBI seeks damages for the migration of contaminants onto its land that occurred more than five years prior to this suit, its claim is time barred because FVBI's causes of action for that migration accrued when the migration occurred. See Keeton, supra, § 13, at 84.

FVBI's claim for injuries caused by the additional petroleum migration that occurred during the five years immediately preceding the filing of this suit is not so easily disposed of, however. I agree with the majority that the migration of petroleum onto FVBI's property has been continuous from the time of the first invasion. However, the majority errs in failing to recognize that continuity of the trespass is necessary but not sufficient to establish that FVBI is relegated to a single cause of action. As I have explained, in addition to continuity of the trespass, permanence of the injury is also necessary, and that element has not been established as a matter of law. Whether the contamination on Eakin's land caused a permanent injury was at least a disputed question of fact because BP did not establish that the contamination on Eakin's property would not likely be abated. Compare Richmond Fairfield Ry., 157 S.E. at 818 (holding that sewer discharging waste onto plaintiff's property did not cause a permanent injury because the other party intended to end the flow onto plaintiff's prop-

10

erty), with Virginia Hot Springs, 56 S.E. at 219 (citing with approval City of Paris, which held that sewer that discharged into water running onto the plaintiff's land did cause a permanent injury because the city considered the sewer to be permanent when it was constructed and "[n]o move ha[d] been made by the city authorities to abate the nuisance" (internal quotation marks omitted)). Holding that a cause of action for damages for perpetual migration of contaminants onto a plaintiff's land accrues immediately upon the first invasion, when it has not been established that the migration will indeed continue indefinitely, would "compel[] the defendant to pay for a perpetual wrong, which he would perhaps put an end to." Norfolk & W. Ry., 87 S.E. at 561 (opinion on rehearing) (internal quotation marks omitted). Accordingly, a reasonable jury could find that FVBI timely asserted its trespass cause of action to the extent that FVBI seeks damages for the migration of contaminants onto its property during the five years immediately preceding the filing of this suit.

III.

In sum, I concur in the majority's affirmance of the grant of summary judgment by the district court on FVBI's third-party beneficiary claim. Regarding the trespass claim, I would affirm the grant of summary judgment against FVBI to the extent that FVBI seeks damages for migrations that occurred more than five years prior to the filing of this suit. I would reverse, however, to the extent that FVBI seeks damages for migrations that occurred during the five years immediately prior to the filing of this action.

11